# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

MATTHEW TIMOTHY NORRIS,   :

    **Petitioner**,             :

                                **CIVIL ACTION NO. 4:08-0458**

      **v.**                :

                                  **(MCCLURE, D.J.)**

                         :           **(MANNION, M.J.**)

RAYMOND LAWLER and
PA ATTORNEY GENERAL,    :

    **Respondents.**         :

## REPORT AND RECOMMENDATION[1]

Petitioner, who is currently incarcerated at SCI Dallas in Dallas, Pennsylvania, filed the instant *pro se* habeas corpus petition pursuant 28 U.S.C. §2254. For the reasons set forth below, the court recommends that the petition be DENIED.


## I. FACTS AND PROCEDURAL BACKGROUND

On the evening of April 24, 2000, Sydney Bull, a Shippensburg University student, was at a meeting with his study group at a classmate's apartment. (Doc. No. 16-26 at 2). At approximately 9:30 pm, Bull received a

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited herein have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

page, and told the study group he would be back soon, but he never returned. *Id.*

On that evening, the petitioner, Emmett Lockhart and Dontae Chambers had planned to rob Sydney Bull, the victim, of drugs and money.[2] (Doc. No. 16-21 at 4). Pursuant to a prearranged meeting, Lockhart drove the three men to pick up Bull. *Id.* After Bull got into the car, Lockhart drove up into the mountains while petitioner gave him directions. *Id.*

During the car ride, petitioner pulled a pistol grip shotgun on Bull, which remained pointed at Bull for the remainder of the trip. They eventually reached a pull-off area along a mountain road where they parked. *Id.* Once parked, Bull was led, at gunpoint, twenty to thirty yards into the woods. *Id.* at 5. When they reached a clearing, Lockhart and Bull began to scuffle. *Id.* Petitioner then held the gun within a few feet of Bull's face, causing him to freeze. *Id.* Bull began to plead for his life, and petitioner suddenly shot Bull, who fell onto his back. *Id.*

Petitioner then went through the victim's duffel bag and began digging through his front pockets. (Doc. No. 16-21 at 5). Lockhart had brought along

---

[2] Petitioner and Bull sold drugs for Lockhart, and Chambers had previously met Bull. (Doc. No. 16-21 at 4).

a gas can and began pouring gasoline onto the body. *Id.* The petitioner then set the corpse on fire. *Id.* The gas can was placed several feet from Bull's head where it also was burned. *Id.*

During the murder investigation, Chambers gave the police the story of what had happened to Bull, as set forth above, on April 24, 2000. (Doc. No. 16-21 at 4). Although his story changed several times, including at trial, the details of his story were corroborated by other evidence, including physical evidence found at the scene. *Id.* at 5. Moreover, these details that Chambers revealed, that were not released to the public, included: the victim was shot once with a shotgun; the wound was to the left side of his face in the mouth area; the shot was fired at a very close range; the victim was killed before he was burned; the victim was lying on his back when he was burned; the body was found in a clearing in the woods about 50 feet from a pull-off area along a mountain road; the body had been doused with gasoline; a melted plastic gas container was found several feet from the head of the body; the change and keys found near the body made it clear that someone had gone through the victim's pockets; and the victim's book bag was found at the scene. *Id.* at 5-6). Although Chambers gave a number of contradictory statements to the police, all of these facts were contained within those statements. *Id.* at 6.

In addition to Chambers' eyewitness testimony and the corroborating physical evidence referred to above, there was also circumstantial evidence to link the petitioner to the murder. *Id.* Bull was killed by a 12-gauge shotgun and a Remington No. 8 shotgun shell. *Id.* The petitioner owned a 12-gauge pistol grip shotgun, and had purchased a box of Remington No. 8 shotgun shells just a few days before the murder. *Id.* Furthermore, the victim's DNA was found on petitioner's shotgun, about five inches from the front end of the barrel. *Id.*

On May 12, 2001, in the Court of Common Pleas of Cumberland County, Pennsylvania, after trial by jury, the petitioner was found guilty of first degree murder, kidnaping, arson, robbery, theft by unlawful taking, abuse of corpse, and five counts of criminal conspiracy. (Doc. No. 16-26 at 3). Because the jury became deadlocked at the subsequent penalty phase, the trial court declared a mistrial and imposed the mandatory sentence of life imprisonment on the first-degree murder conviction. (Doc. No. 16-9 at 3). On June 20, 2001, the trial court re-imposed the life sentence and also directed petitioner to serve a concurrent aggregate term of ten to twenty years imprisonment on the remaining counts. (Doc. No. 16-26 at 3). Petitioner filed post-sentence motions, and on November 16, 2001, the trial court denied petitioner post-

sentence relief. (Doc. No. 16-9 at 3). Petitioner appealed to the Superior Court of Pennsylvania, and on October 7, 2003, the Superior Court affirmed petitioner's sentence.  (Doc. No. 16-26 at 3). Petitioner then filed a petition for allowance of appeal which the Pennsylvania Supreme Court denied on August 17, 2004. *Id.*[3]

About one month later, the petitioner filed a petition under the Post-Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. 9541 *et seq.*, and on June 15, 2006, the trial court denied petitioner's PCRA petition. (Doc. No. 16-21). Petitioner then appealed to the Superior Court, and on May 31, 2007, the Superior Court affirmed the denial of the PCRA petition. (Doc. No. 16-26). Petitioner then filed a petition for allowance of appeal, which the Pennsylvania Supreme Court denied on October 24, 2007. (Doc. No. 16-30).

On March 12, 2008, petitioner filed the instant petition for writ of habeas corpus under 28 U.S.C. §2254. (Doc. No. 1). On August 15, 2008, the respondents filed a response. (Doc. No. 11). The petition is ripe for review.

## II.  LEGAL ANALYSIS

In the instant petition, petitioner alleges (1) that the trial court

---

[3] Petitioner also filed a direct appeal, which he states was denied on March 20, 2002. (Doc. No. 1 at 2),

improperly admitted expert testimony and (2) multiple claims that counsel was ineffective. *Id.* These claims will be considered below.

## A. Evidentiary Claim

Petitioner argues that the trial court improperly admitted the testimony of the Commonwealth's expert, a forensic scientist, who opined that the victim's DNA that she found on the murder weapon was not the result of casual handling of the weapon by the victim. (Doc. No. 1 at 9-11). Petitioner claims this testimony violated *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).[4] *Id.*

By way of response, respondents argue that petitioner's claim regarding the admissibility of the expert testimony must be denied because petitioner does not present a federal claim. (Doc. No. 11 at 16). The court agrees. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991)(internal citations omitted). Accordingly, it is not the province of a federal habeas court to reexamine

---

[4]*Daubert*, which overruled *Frye*, is the standard for the admission of expert testimony in a federal trial.

state-court determinations on state-law questions. *Id.* at 67-68. Therefore, when a petitioner challenges the correctness of an application of state law without alleging a deprivation of any federal right, he may not obtain habeas relief. *Engle v. Isaac*, 456 U.S. 107, 119 (1982).

Moreover, respondents cite to *Keller v. Larkins*, 251 F.3d 408 (3d Cir. 2001), where the petitioner, who was seeking habeas relief, had claimed the expert testimony admitted in the state trial court failed to meet the standard set out in *Daubert*. In denying petitioner Keller's claim, the Third Circuit explained:

> This case, however, is not a direct appeal from a federal trial in which counsel objected to the admission of expert testimony under Fed. R. Evid. 702. Keller was tried in state court , and the admission of expert testimony in a state trial presents a question of state law -- unless of course, the evidence violates due process or some other federal constitutional right, and Keller makes no such argument.

*Keller,* 251 F.3d at 419.

Here, like in *Keller,* the court finds petitioner's claim regarding the admissibility of the expert testimony during his state trial presents a question of state law. In deciding whether to admit the expert testimony, the Court of Common Pleas applied the *Frye* standard, which is the Pennsylvania standard. *See Commonwealth v. Topa*,369 A.2d 1277(Pa. 1977).(adopting

the *Frye* test as Pennsylvania law). *See also* [*Blum v. Merrell Dow Pharms., Inc.*, 764 A.2d 1(Pa. 2000)](noting *Frye* has been applied to determine the admissibility of expert testimony in Pennsylvania). Moreover, petitioner does not argue the admissibility of the expert testimony under *Frye* was a due process violation or a violation of any other constitutional right. Therefore, the court recommend's that petitioner's claim regarding the admissibility of the expert testimony in the Court of Common Pleas be denied.[5]

## B. Ineffective Assistance of Counsel Claims

A district court is authorized to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." [28 U.S.C. §2254](). A petition for writ of habeas corpus is the exclusive federal remedy for a state prisoner challenging the "very fact or duration" of his confinement and seeking "immediate release or a speedier release from that imprisonment." [*Preiser v. Rodriguez*, 411 U.S. 475, 498-500 (1973)]().

---

[5] Assuming *arguendo* that petitioner had raised a federal claim, respondents argue this claim should still be rejected because this claim is procedurally defaulted. The court agrees, but need not address this issue as the court finds petitioner failed to raise a federal claim.

The Constitution guarantees criminal defendants the effective assistance of counsel, U.S. CONST. amend. VI, which is measured by "reasonableness under prevailing professional norms." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish a violation of that right, a relator must make two showings. First, he "must show that counsel's performance was deficient." *Id.* Counsel is deficient if, "on the facts of the particular case, viewed as of the time of counsel's conduct," his conduct was unreasonable. *Id.* at 690. There is a strong presumption that counsel is effective. *Id.*; *see id.* at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). Second, he must affirmatively show that the deficient performance "prejudiced the defense." *Id.* at 687, 693. Prejudice means that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694-95. In assessing prejudice, the court must consider the totality of the evidence that was before the factfinder. *Id.* at 695.

Petitioner has raised four claims as to counsel's ineffectiveness. These claims were all raised before the trial/PCRA court as well as the Superior Court. (Doc. No. 16-21); (Doc. No. 16-26).

In evaluating the merits of a state prisoner's habeas petition that has been presented to a state court and adjudicated on the merits, the district court must generally defer to the decisions of the state courts. A district court may not grant a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see* *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)(discussing standard); *Harrington v. Gillis*, 456 F.3d 118, 124 (3d Cir. 2006) (same). A decision by a state court is "contrary to . . . clearly established federal law" "if the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law or if the state court decides a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *Harrington*, 456 F.3d at 124; *see Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 887-88 (3d Cir. 1999) (*en banc*). A decision by a

state court unreasonably applies federal law if "the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413; *Harrington*, 456 F.3d at 124.

The application of §2254(d)(1) entails two steps. First, the court must determine whether "Supreme Court precedent requires an outcome contrary to that reached by the relevant state court." *Matteo*, 171 F.3d at 888 (quoting *O'Brien v. Dubois*, 145 F.3d 16, 24-25 (1st Cir. 1998), *overruled in part on other grounds by McCambridge v. Hall*, 303 F.3d 24 (1st Cir. 2002)). Then, if the court determines that the state court's decision was not "contrary to" federal law, "either because the state court decision complies with the Supreme Court rule governing the claim, or because no such rule has been established," the court must determine whether the state court's application of federal law was an "unreasonable application" of the Supreme Court rule. *Id.* at 889. Unreasonableness is an objective determination; a state court decision is unreasonable if, "evaluated objectively and on the merits, [it] resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.* at 889-90; *see Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).

Pennsylvania's standard for ineffective assistance of counsel in adjudicating a PCRA petition is similar to the standard announced in *Strickland*.  Pursuant to 42 PA. CONS. STAT. ANN. § 9543(a)(2)(ii), a defendant petitioning under the PCRA in state court must show that ineffective assistance of counsel "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."  To determine if petitioner met the required showing, the Superior Court applied

> the performance and prejudice test set forth in *Strickland v. Washington*, 466 U.S. 688 (1984). *Commonwealth v. Sneed*, 899 A.2d 1067,1075-76 (Pa. 2006). To better focus the *Strickland* analysis, our Supreme Court has applied the performance part of the test looking both to the arguable merit of the claim lodged against counsel as well as the objective reasonableness of the path taken, or not taken, by counsel.

> > Thus, the constitutional ineffectiveness standard requires the defendant to rebut the presumption of professional competence by demonstrating that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome would have been different. A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim.

> *Id.* (citations omitted).

(Doc. No. 16-26 at 7). Thus, Pennsylvania's standard is not "contrary to" the

standard announced in *Strickland*. *See Werts*, 228 F.3d at 204 (Pennsylvania's standard not "contrary to" federal standard); *Pierce*, 527 A.2d at 976-77 (same). Moreover, in the instant case, the state courts properly applied Pennsylvania's standard in the petitioner's PCRA petition and appeal. Thus, there was no outcome contrary to the law as announced by the Supreme Court.

Accordingly, the court will review petitioner's four separate ineffective assistance of counsel claims to see if the state court unreasonably applied the ineffective assistance of counsel standard.

### 1. Failure to Object

Petitioner alleges that trial counsel was ineffective for failing to object to improper statements that the prosecutor made, namely referring to facts not in evidence, during the course of the prosecutor's closing argument. (Doc. No. 1 at 13-16). Specifically, petitioner claims that the prosecutor improperly stated that Chambers testified about (1) the type of ammunition used in the murder, (2) a receipt in the petitioner's car for shotgun shells, (3) any phone records saying the petitioner was the person the victim called from his study meeting, (4) knowing a co-defendant had the victim's number in his car, and

knowing the co-defendant's number was listed next to the victim's home phone, (5) any reference to blood spatter on the victims hand, and (6) that the gun was for shooting Bull if they had to. *See id.* Petitioner argues that if counsel had objected to the prosecutor's improper statements, the verdict would have been not guilty.

A review of the record indicates that the PCRA court found:

> petitioner has failed to prove that the underlying claim has merit. Even if they were objectionable, none of the statements were so egregious as to justify the grant of a mistrial. All of the alleged improper statements 'were based on evidence or derived from proper inferences.' *See Commonwealth v. Cox*, 581 Pa. 107, 863 A.2d 536, 547 (2004). We are satisfied they were fair comment on the evidence and were not such as to 'prejudice the jury, forming in their minds fixed bias and hostility towards the accused that would prevent them from properly verifying the evidence and rendering a true verdict.' *Id.* None of the statements in this case crossed the line between permissible 'oratorical flair' and impermissible 'prosecutorial misconduct.' *Id.* Furthermore, we are satisfied that petitioner was not prejudiced by the statements, we note that we consistently impressed upon the jury its function of deciding the facts from the evidence. For instance, at the commencement of closing arguments we instructed the jury as follows . . . []."

(Doc. No. 16-21 at 6-7). Petitioner appealed the PCRA court's decision, and the Superior Court affirmed, adopting the PCRA court's reasoning.

Respondents argue petitioner's claim should be denied because (1) the

trial court's standard for determining ineffective assistance of counsel is consistent with *Strickland* , (2) the PCRA court's reliance on *Commonwealth v. Cox* for petitioner's underlying claim is consistent with *United States v. Young*, 470 U.S. 1 (1985), and (3) the state courts' decisions were not "contrary to" nor did they involve an "unreasonable application" of clearly established federal law as determined by the Supreme Court of the United States. (Doc. No. 11 at 20-23). The court agrees.

As an initial matter, this court finds respondents correctly contend that *Commonwealth v. Cox* is not contrary to *United States v. Young*, which is clearly established federal law as determined by the Supreme Court. In *United States v. Young*, the Supreme Court explained:

> Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding. Instead, as *Lawn* teaches, the remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error. In other words, the Court must consider the probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly. In this context, defense counsel's conduct, as well as the nature of the prosecutor's response, is relevant. Indeed most Courts of Appeals, applying these holdings, have refused to reverse convictions where prosecutors have responded reasonably in closing argument to defense counsel's attacks, thus rendering it unlikely that the jury was led astray.

*Young*, 470 U.S. at 11-12 (internal citations omitted). As such, this court finds that *Young* is not contrary to *Cox*.

Based on the record before this court, we, like the PCRA court find the statements the prosecutor made were not prejudicial, and therefore, petitioner was not prejudiced by counsel's failure to object. The comments the prosecutor made were based on evidence or derived from proper inferences based on evidence that had been admitted during the course of the trial. As such, the PCRA court cited to *Cox*, which is consistent with *Young,* and found the prosecutors remarks did not "prejudice the jury, forming in their minds fixed bias and hostility towards the accused that would prevent them from properly verifying the evidence and rendering a true verdict." (Doc. No. 16-21 at 7). Moreover, even if the prosecutor had improperly characterized the testimony of witnesses during his closing argument, the trial court instructed the jury that the speeches given by counsel during closing arguments were not evidence. *Id.* Therefore, respondents argue and, the court agrees, that the jury was able to evaluate and correct any errors the prosecutor may have made. As such, the PCRA court, and this court finds, petitioner was not prejudiced by the statements the prosecutor made, nor was he prejudiced by

counsel's failure to object.[6]

Consequently, the court finds, as did the state courts, that counsel's performance comported with constitutional requirements. Accordingly, the state court decisions challenged by the petitioner here reasonably comported with the law, and therefore, the court recommends that petitioner's ineffective assistance of counsel claim, arising from counsel's failure to object to the alleged improper statements during the prosecutor's closing argument, be denied.

### 2. Refusing to Investigate and Call an Exculpatory Witness

According to petitioner, counsel was ineffective for failing to call Dave Brown as a witness. Petitioner alleges that Dave Brown,

> "the victim's roommate saw the victim [Bull] handling the Petitioner's gun but trial counsel never called him for questioning, thus denying the Petitioner the concomitant right to compulsory process to obtain exculpatory evidence. The defense argued that the DNA [of the victim] was from casual handling but failed to investigate when informed that the victim's roommate [Dave Brown] had seen the victim handle the gun."

___

[6] As the court agrees with the state courts' decisions that petitioner was not prejudiced by counsel's failure to object, the court will not address the first prong of the *Strickland* test. However, if this court had addressed the first prong of the test, the court notes that during the PCRA hearing, counsel testified he did not object because he did not find any of the statements objectionable.

(Doc. No. 1 at 17). Thus, petitioner claims that trial counsel was ineffective in failing to investigate and call Dave Brown to corroborate his own testimony that the victim had been handling the shotgun within days of the incident.

However, like the PCRA court, this court finds that counsel had a reasonable strategic basis for not calling Brown to testify. (Doc. No. 16-21 at 8). According to counsel:

> "Prior to this murder charge having been brought, with the exception of some summary conviction that didn't amount to anything, Matt Norris had a clean record. There was no indication of any crime of violence in his past or any violent propensity.
>
> The witness, Dave Brown, if called to testify, would have testified that on a prior occasion he, Dave Brown, and Matt Norris, my client, and Sydney Bull, the victim, were riding around in a car casing a drug store, I believe, intending to rob it.
>
> I didn't want to go there. I didn't want to open that door. I believe I successfully prevailed at pretrial in preventing Mr. Keating from getting into that incident, and I didn't want to open that door."

(Doc. No.16-21 at 8). Moreover, Sergeant Steve Junkin, who had interviewed Dave Brown during the original murder investigation, found that (1) Bull, Brown, and petitioner were in fact casing a potential robbery target, and (2) that even though Brown had told him that petitioner's shotgun was in their car, Brown specifically *denied* that the victim had handled it. *Id.* at 8-9 (emphasis added).

18

Consequently, it appears that counsel did have a reasonable basis for not calling Dave Brown to testify, and that even if he had done so it was not likely Dave Brown would have testified that the victim, Bull, had handled the gun. Therefore, Brown's testimony would not likely have aided petitioner or corroborated petitioner's testimony.

As such, the court agrees with the PCRA court and finds that counsel acted reasonably and, therefore, counsel was not ineffective. Moreover, the PCRA court and the Superior Court's decisions involved a reasonable application of the first prong of *Strickland* under §2254(d)(1), and therefore, the court recommends that this claim be denied.

### 3. Not Accepting the Court's Offer of a Mid-Trial Continuance

During petitioner's trial, Chambers testified that he had told the police that he and Bernard Adams had been on the mountain earlier on the day of the murder, a fact, the petitioner's attorney was not previously informed of. (Doc. No. 16-21 at 9). At trial, Sergeant, formerly Corporal, Junkin, explained that this statement by Chambers was not put in his report because:

> it was a fleeting statement. It was one of those where he started to go off. I redirected. That happens in every interview. And many interviews in this particular case where statements were made that were a quick one, and right away it was recanted, and was

proven or obviously not true.

*Id.* at 10. Furthermore, the Commonwealth recounted the passing nature and immediate recantation of the reference to Bernard Adams and explained the circumstances surrounding its failure to provide the details of the statement regarding Bernard Adams to the defense. *Id.* Accordingly, the court was satisfied that the failure to tell opposing counsel was inadvertent. *Id.* Petitioner's trial counsel requested a mistrial which was denied, but the court offered to recess for up to several days to give counsel the opportunity to conduct additional investigation. *Id.* However, both counsel for petitioner and his co-defendant elected to proceed with the trial. *Id.*

Petitioner argues defense counsel was ineffective for not taking a continuance to prepare a defense based on Bernard Adams. (Doc. No. 1 at 18). Petitioner alleges that Bernard Adams was not accounted for from 10 pm to 11 pm on the night of the murder, was found on campus the day after the murder carrying a handgun, and that Adams had fled to Boston during the investigation of Bull's murder. *Id.* Based on the foregoing, petitioner avers that counsel could have tried to prepare a defense relating to Adams as he was also involved in cocaine trafficking and gun use. *Id.*

The court disagrees and finds that counsel was not ineffective for not

accepting the court's offer of a mid-trial continuance. Again, this court agrees with the PCRA court, and finds that petitioner's counsel had a reasonable and strategic reason for not pursuing a defense based on Adams. During the PCRA hearing, counsel explained:

> "There were two reasons [for not pursuing the Adams theory]. . . One was we had a jury in the box. It wasn't a matter of inconveniencing them so much as it was that I didn't know where to go with this information no matter who much time Judge Guido would have given me. I didn't believe for one second that if I would have run down Bernard Adams that he was going to admit to murdering Sydney Bull, and I just didn't want to take the time pursuing that effort.
>
> Also, I never believed, at that time, and to this day, that Dontae Chambers was on the mountain at all. I felt we were going to pursue that vigorously."

(Doc. No. 16-21 at 11).

This court finds, as the PCRA court found, that counsel's explanation for not pursuing a theory based on Adams was reasonable. Since counsel's theory of the case was that petitioner and Chambers were never on the mountain on the day of the murder - if counsel was to a pursue a theory based on Adams - it would require a finding that Chambers had been on the mountain on the day of the murder, which clearly conflicted with counsel's theory of the case. Therefore, the court finds that the state courts' application

of *Strickland* was reasonable under § 2254(d)(1)and accordingly, the court recommends this claim be denied.

### 4. Failing to Conduct Independent Testing

The Commonwealth's expert opined that the victim's DNA, in the form of blood, found on the murder weapon was not the result of casual handling of the weapon by the victim. (Doc. No. 11 at 25). Petitioner claims that counsel was ineffective in failing to conduct independent DNA testing of the murder weapon, the gun, because "Had counsel independently tested the gun, there is a great possibility that outside those two-quarter sized areas [that the Commonwealth's expert tested], there would have been detectable DNA from casual handling from others who had handled the gun and that would have disproved the Commonwealth's theory." (Doc. No. 1 at 17). Thus, petitioner claims that additional testing would have bolstered petitioner's position that the victim's DNA was deposited on the shotgun barrel due to the victim's handling of the gun, thereby making the DNA on the gun the result of casual handling. (Doc. No. 16-21 at 11).

In reviewing this claim, the PCRA court found "petitioner has again failed to come forward with any evidence to show that further testing would have made a difference, or even that further testing was possible." *Id.* In a

footnote, the court further explained that "the substance on the barrel of the shotgun was very minute." *Id.* Thus, we agree with the PCRA court that petitioner failed to demonstrate that he was prejudiced, or that the outcome of the trial may have been different, if counsel had conducted an independent test of the weapon.[7]

Therefore, the court finds the state courts' application of *Strickland* was reasonable under §2254(d)(1), and accordingly, the court recommends that this claim be denied.

---

[7] Assuming *arguendo* that we found petitioner was prejudiced by counsel's failure to conduct independent testing of the murder weapon, we still would have recommended that this claim be denied. At the PCRA hearing, counsel testified that he did not have the gun retested because he feared it would prove Bull's blood was on the gun, thereby rendering the case not triable. The expert that the Commonwealth used was unable to state it *was* Bull's blood on the gun, so if he had done testing that determined Bull's blood was on the gun, petitioner would not have had a case. Thus, we could have found counsel acted reasonably.

## III. CONCLUSION

For the reasons elaborated above, **IT IS RECOMMENDED THAT** petitioner's petition for writ of habeas corpus, **(Doc. No. 1)**, be **DENIED**.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**DATE: October 26, 2009**